UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| vs. | § | Case No. 3:18-cr-00200 |
| | § | Honorable William L. Campbell, Jr |
| LUIS COLINDRES | § | United States District Judge |
| Defendant. | § | |

**DEFENDANT'S MOTION TO SUPPRESS STATEMENT**

Under the Fifth, Sixth and Fourteenth Amendments, Defendant Luis Colindres moves to suppress the statements that federal agents and state detectives elicited from him on February 28, 2018, in the Christian County, Kentucky Jail. They questioned him without his lawyer even though he had been charged and appointed an attorney by the Christian County Circuit Court.

**Statement of Facts**

On September 24, 2017, police were called to an apartment complex at 311 Natchez Court in Nashville, Tennessee. Upon arrival, officers discovered two deceased persons with multiple gunshot wounds inside a Lincoln MKS vehicle. The victims were later identified as Hector Pagada and Yeri Gabino

Video surveillance from the apartment complex showed a white Chevrolet Traverse pull into the parking lot and block the Lincoln MKS. A person existed the Traverse and fired shots into the victims' vehicle. The shooter left the scene in the Traverse.

Three days later, the co-defendant, Oscar Delgado Flores entered the Davidson County Metropolitan Police Department South Precinct. Mr. Flores admitted he was the driver of the Traverse at the time of the shooting.

On October 9, 2017, Luis Colindres was arrested in Christian County, Kentucky on the charges of possession of controlled substance – first degree (indicating possession for distribution), possession of drug paraphernalia, tampering with evidence, and numerous traffic related offenses. Mr. Colindres was appointed an attorney, Kenneth Eric Bearden, of the Department of Public Advocacy. The case was assigned the number 2017-CR-718 in Circuit Court for Christian County, Kentucky. Another status conference is scheduled for June 30, 2020.

On February 28, 2018, Homeland Security Special Agent Perez, two detectives presumably with Davidson County Metro Police Department, and one unidentified male pulled Mr. Colindres from his cell and confronted him. In the absence of Mr. Colindres' lawyer, they questioned him about his alleged involvement in the deaths of Pagada and Gabino, involvement in another homicide, drug trafficking, and MS-13 gang activities. The detective informed Mr. Colindres there is a Tennessee criminal homicide warrant outstanding for his arrest and those are not issued without evidence.

Agent Perez started to recite the *Miranda* rights qualifying his warning with ". . . before you make your decision about whether or not you're going to talk to us, I have a story that I want to explain to you, so that you understand very well . . . ." (Quotation taken from government's transcription provided in their discovery production.) Agent Perez recites the *Miranda* warnings and finishes with "I . . . I'm going to tell you this story about why we are here."

Agent Perez never obtained a written or verbal acknowledgment by Mr. Colindres that he understood his rights or that he waived his rights under *Miranda*. The interrogation lasted five and a half hours.

2

**Argument**

**I.  Luis Colindres did not waive his *Miranda* rights before making statements to law enforcement.**

In *Miranda*, the Supreme Court of the United States held that a suspect's waiver of the Fifth Amendment privilege against self-incrimination is valid only if it is made "voluntarily, knowingly, and intelligently." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). The inquiry as to whether a waiver is involuntarily and is therefore coerced "has two distinct dimensions." *Moran v. Burbine*, 475 U.S. 412, 421, (1986).

> First the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the 'totality of the circumstances surrounding the interrogation' reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived." *Ibid.* (quoting *Fare v. Michael C.,* 442 U.S. 707, 725, 99 S.Ct. 2560, 2572, 61 L.Ed.2d 197 (1979)).

Addressing the second consideration in *Moran*, the Supreme Court further indicated that a "heavy burden" rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel *North Carolina v. Butler*, 441 U.S. 369, 372–73 (1979) citing, *Miranda v. Arizona*, 384 U.S. at 475.

The government has failed to meet that "heavy burden" here for two reasons. First, law enforcement offers no evidence of any *Miranda* acknowledgement and/or waiver by Mr. Colindres, which would establish that he understood and relinquished his constitutional rights. Second, even if a waiver is implied by Mr. Colindres answering questions, the implied waiver would be invalid because of the coercive circumstances and law enforcement conduct.

The one and only time Mr. Colindres was advised of his rights was not until after he was removed from his cell and placed in a small room surrounded by four law enforcement officers. After Agent Perez recited the *Miranda* warnings, he did not obtain a written or verbal "full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran v. Burbine*, 475 U.S. at 421. Instead, he tells his "story" of why the officers are questioning Mr. Colindres. The story is told to coerce Mr. Colindres to answer their questions because the story suggests he is in trouble and needs to explain his way out of it.

Agent Perez did not provide Mr. Colindres with a written *Miranda* admonition or waiver, which would provide direct evidence the officers were acting within the bounds placed on them by the United States Constitution. The experienced officers never presented Mr. Colindres with a department-issued *Miranda* admonition and waiver form, nor did they generate any meaningful verbal acknowledgment by Mr. Colindres of his rights and his waiver. The experienced officers tell Mr. Collindres their story of the trouble he is in and why he needs to explain rather than exercise his right to remain silent or ask for an attorney. The lack of any written or verbal relinquishment of constitutional rights does not meet the heavy burden placed on the government to establish a voluntary, knowing and intelligent waiver *Berghuis v. Thompkins*, 560 U.S. 370, 382–83 (2010).

Second, there is no voluntary *Miranda* waiver because the conditions of this interrogation were coercive. The traditional indicia of coercion, according to the Supreme Court are: "the duration and conditions of detention..., the manifest attitude of the police toward [the defendant], [the defendant's] physical and mental state, the diverse pressures which sap or sustain [the

4

defendant's] powers of resistance and self-control." *Culombe v. Connecticut*, 367 U.S. 568, 602, (1961).

Mr. Colindres had been in custody of the Christian County, Kentucky Jailer since his arrest in October, 2017. Mr. Colindres was affected by the presence of four law enforcements officers having him removed from his cell and confronting with a double homicide in Nashville, Tennessee and a third homicide. The officers told Mr. Calindres of evidence against him and characterizing it as not good for him. Their story of his troubles immediately after reciting the *Miranda* warnings was designed to make him talk without considering his rights. This altered his mental state and adds to the totality of the circumstances showing that an implied waiver of *Miranda* was not voluntary under the intimidation and coercion.

These indicia of coercion sapped Mr. Colindres' powers of resistance and self-will. The very presence of numerous officers, arriving unexplained and unpredictable, having the authority to remove him from his cell, and interrogating him for over five hours created a highly pressured situation.

Absent a clearly signed *Miranda* acknowledgement and waiver, or other convincing evidence, to overcome these clear indicia of coercion, the government has failed to overcome the "heavy burden" in establishing that Mr. Colindres understood and waived his constitutional rights against self-incrimination. Any statements made by Mr. Colindres, therefore, were obtained in violation of his Fifth Amendment rights, which warrants suppression of the alleged statements given on February 28, 2018.

5

Case 3:18-cr-00200    Document 65    Filed 11/14/19    Page 5 of 10 PageID #: 198

## II. The federal agents and detectives violated Mr. Colindres' Sixth Amendment right to counsel.

The purpose of the Sixth Amendment right to counsel is "to protec[t] the unaided layman at a critical confrontation with his expert adversary." *McNeil v. Wisconsin*, 501 U.S. 171, 177 (1991) (alteration in original; internal quotation marks omitted). Defendants possess this right in the pretrial phase because the time between the arraignment and trial is "perhaps the most critical period of the proceedings." *Massiah v. United States*, 377 U.S. 201, 205 (1964) (internal quotation marks omitted).

This right attaches upon initiating adversary judicial criminal proceedings, such as charging or arraignment. *See*, *McNeil v. Wisconsin*, 501 U.S. at 175. There is a wrinkle for Mr. Colindres' argument. The right has been held to be "offense specific," *id.*, meaning it extends to uncharged crimes only if they are the "same offense" as the charged offense. *Texas v. Cobb*, 532 U.S. 162, 173 (2001).

There are several reasons the Court should suppress Colindres' statements despite *Cobb*. First, the Court should decide whether a constitutional principle might prevent the operation of the "silver platter doctrine" in the Sixth Amendment context. This Court should reach that question and decide there is such a principle.

Before the Fourth Amendment was incorporated against the states, evidence seized unreasonably by state officials could be used at federal trial and vice versa; this was known as the "silver platter doctrine." *Elkins v. United States*, 364 U.S. 206, 208 (1960). This result was justified by the fact that the Fourth Amendment exclusionary rule applied only to the federal government at that time; the state government – a separate sovereign – was not bound by the Bill of Rights. *See*, *Barron v. Baltimore*, 32 U.S. (7 Pet.) 243 (1833). But after incorporation of the Bill of Rights,

6

retaining the dual sovereignty principle made little sense because it enabled the two sovereigns to do collectively what the Constitution prohibited either from doing alone: to collect and then use at trial unreasonably seized evidence. *Elkins v. United States*, 364 U.S. at 215 (reasoning that "[t]o the victim it matters not whether his constitutional right has been invaded by a federal agent or a state officer").

The *Elkins* court believed that its holding would eliminate "inducement to subterfuge and evasion with respect to federal-state cooperation in criminal investigation." *Id.* at 222. "Instead, forthright cooperation under constitutional standards [would] be promoted and fostered." *Id.*

To foster cooperation "under constitutional standards" it is necessary to uphold Mr. Colindres' right to counsel by suppressing his February 28, 2018, statements. If not, the law will enable the two sovereigns to do what the *Elkins* court wanted to deter – collect and then use at trial unreasonably obtained statements. To enable that practice would violate the principle that animated *Elkins*, and the Court should decline to permit it.

It bears mention that last year, the Sixth Circuit issued an en banc decision stating in dicta it joined "the majority view . . . that when a criminal defendant's conduct violates both state and federal law, that defendant commits two separate offenses, even when the state and federal offenses contain the same essential elements." *United States v. Turner*, 885 F.3d 949, 954 (6th Cir. 2018) (en banc).

There are several reasons the Court should suppress Mr. Colindres' statements despite *Turner*. First, that language in *Turner* was dicta because it was unnecessary to the outcome. Before addressing the dual sovereignty issue, the court had made a ruling dispositive of the case. *See*, *United States v. McMurray*, 653 F.3d 367, 375 (6th Cir. 2011) ("Because the statement in

7

*Benton* . . . was not necessary to the outcome in that case, it is dicta that is not binding" (internal quotation marks omitted)), *abrogated on other grounds as explained by Davis v. United States*, 900 F.3d 733 (6th Cir. Aug. 16, 2018).

Second, the *Turner* court merely decided whether a defendant's state-appointed lawyer could be ineffective for failing to properly handle federal pre-plea negotiations. It did not decide whether a constitutional principle might prevent the operation of a silver platter doctrine in the Sixth Amendment context.

Third, even in the Double Jeopardy context, the Sixth Circuit holds that the government "cannot sidestep the constraints of the Double Jeopardy Clause through a 'sham' prosecution by an ostensibly different sovereign." *United States v. Djoumessi*, 538 F.3d 547, 550 (6th Cir. 2008). So, this Court must at least recognize a sham-prosecution exception to a rule that would treat, for Sixth Amendment purposes, offenses as different offenses based on the dual sovereign doctrine. Here, the federal agent and state detectives were coordinating their investigation and sidestepping Mr. Colindres' lawyer appointed by the Commonwealth of Kentucky Circuit Court which was holding his body. At an evidentiary hearing, the Court should determine whether a sham-prosecution doctrine applies here.

Lastly, on June 17, 2019, the Supreme Court released its Opinion recognizing that under the dual-sovereignty doctrine, the Double Jeopardy Clause allows successive prosecutions by separate sovereigns. *Gamble v. United States*, 139 S. Ct. 1960, 204 L. Ed. 2d 322 (2019). Mr. Colindres takes the position that the dual-sovereign doctrine conflicts with the original meaning of the Fifth Amendment and so it cannot be used to justify letting federal and state officers circumvent a suspect's right to counsel. From a visceral level, allowing officers to interrogate an

8

inmate when the Defendant has a lawyer is an abridgement to the right and purpose of having a lawyer.

## Conclusion

Luis Colindres was arrested and detained in the Christian County, Kentucky Jail. He was appointed a lawyer. In his lawyer's absence, he was taken from his cell, surrounded by four law enforcement officers, and interrogated about murders, drug dealings, and gang related activities. The officers intimidated him saying a judge issued a murder warrant for his arrest. No written or verbal *Miranda* acknowledgement and/or waiver was obtained. Because law enforcement violated his Fifth and Sixth Amendment rights, the Court should suppress Mr. Colindres' statements.

Respectfully submitted,

**WEATHERLY, MCNALLY & DIXON, PLC**

By: *s/Patrick McNally*
PATRICK T. MCNALLY (Tenn. Bar #010046)
424 Church Street
Fifth Third Ctr., Suite 2260
Nashville, Tennessee 37219
(615) 986-3377
pmcnally@wmdlawgroup.com

*Attorney for Luis Colindres*

9

**CERTIFICATE OF SERVICE**

       I hereby certify that a true and correct copy of the foregoing Motion to Suppress Statement has been electronically filed with the clerk of the Court by using the CM/ECF system, which will send a Notice of Electronic Filing to Mr. Ahmed A. Safeeullah, Assistant U.S. Attorney, 110 9th Ave, South, Suite A-961, Nashville, TN 37203, and Mr. Luke Evans, counsel for Oscar Delgado Flores, 302 N. Spring Street, Murfreesboro, TN 37130, on this the 14th day of November, 2019.

                                                s/*Patrick T. McNally*
                                                PATRICK T. MCNALLY